**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| CLARINS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 25-cv-13644 |
|        v. | ) | |
| | ) | |
| COSTCO WHOLESALE CORPORATION, | ) | Judge |
| | ) | |
|     Defendant. | ) | |

## COMPLAINT

Plaintiff, Clarins (hereinafter "Plaintiff"), by and through its undersigned counsel, hereby files this Complaint for, *inter alia*, willful trademark infringement, counterfeiting, and related claims against Defendant, Costco Wholesale Corporation (hereinafter, "Defendant"), and respectfully alleges as follows.

## NATURE OF THE ACTION

1.     Plaintiff brings this action under the Trademark Act, 15 U.S.C. § 1051 et seq., for willful trademark infringement arising from Defendant's sale of counterfeit versions of Plaintiff's products and willful infringement of Plaintiff's trademarks. Defendant has traded upon Plaintiff's reputation and goodwill by offering products for sale under Plaintiff's house mark CLARINS® and trademark DOUBLE SERUM®, which is associated with Plaintiff's flagship skincare product. Plaintiff brings this action to seek injunctive relief, damages, and any other remedies available under law to prevent further infringement and protect its brand integrity.

2.     In 2022, Plaintiff discovered that Defendant was offering counterfeit skincare products bearing both the CLARINS® and DOUBLE SERUM® marks at Defendant's website (www.costco.com) and Defendant's physical stores. Plaintiff notified Defendant regarding

1

Defendant's sale of counterfeit products and the resulting trademark infringement committed by Defendant, requesting Defendant to cease its infringement and take corrective action to address the infringement. Later, Defendant eventually agreed to cease such conduct and committed to issuing refunds and notices to affected consumers.

3. Despite these assurances, Plaintiff has recently discovered that Defendant is continuing to offer for sale skincare products through its website at www.costco.com, using Plaintiff's CLARINS® and DOUBLE SERUM® marks. Upon information and belief, those products are counterfeit skincare products sold in connection with Plaintiff's famous CLARINS® and DOUBLE SERUM® trademarks. Plaintiff has been and will continue to be irreparably damaged through consumer confusion, as well as dilution and tarnishment, with respect to its valuable trademarks as a result of Defendant's actions.

4. Upon information and belief, Defendant's counterfeit products, bearing without authorization Plaintiff's CLARINS® and DOUBLE SERUM® marks, have not been confirmed as approved by U.S. regulatory agencies. Defendant's unauthorized use of Plaintiff's marks in connection with such unverified and potentially unsafe products not only diminishes the integrity, distinctiveness, and goodwill associated with Plaintiff's trademarks, but importantly may pose serious risks to consumers. Plaintiff has no choice but to file this action to combat Defendant's continued infringement of Plaintiff's registered CLARINS® and DOUBLE SERUM® trademarks, as well as protect unknowing consumers from purchasing counterfeit products that are not of the same quality as authentic CLARINS® products, but even worse, may cause harm to consumers' skin. Defendant's repeated conduct demonstrates a deliberate disregard for Plaintiff's trademark rights and constitutes willful trademark infringement, warranting injunctive relief, monetary damages, and enhanced remedies under federal law.

## PARTIES

5.      Plaintiff is a société par actions simplifié organized under the laws of France, with its principal place of business at 9 Rue Du Commandant Pilot, Neuilly-Sur-Seine, France 92200.

6.      Upon information and belief, Defendant is a corporation organized under the laws of Washington, with its principal place of business at 999 Lake Dr, Issaquah, Washington, 98027.

7.      According to records available from the official website of the Illinois Secretary of State, Defendant also maintains subsidiary companies that are incorporated in the State of Illinois.  In addition, upon information and belief, Defendant maintains employees, offices, and wholesale stores that are accessible by the general public in the State of Illinois.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction in this action pursuant to 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332, 1338(a)-(b), and 1367.  The Court has subject matter jurisdiction over the claims in this action pursuant to the provisions of the Trademark Act of 1984, 15 U.S.C. § 1051, et seq. The Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims are so related to Plaintiff's federal question claims that they form part of the same case or controversy.

9.      This Court has personal jurisdiction over Defendant in that it transacts business in the State of Illinois and in the Northern District of Illinois.  Defendant conducts business through its physical stores and its official website www.costco.com.  Defendant directly advertises, solicits business, and targets business activities toward consumers in the United States, including those located in Illinois, through its physical stores and official website.  Defendant's unauthorized use of Plaintiff's trademarks and sale of counterfeit DOUBLE SERUM® skincare

products have caused confusion among Illinois consumers and potential harm to consumers who have used the counterfeit DOUBLE SERUM® skincare products.

10.     Defendant has purposefully availed itself of the privilege of conducting business in this judicial district and has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being sued in a court in Illinois.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to Plaintiffs' claims have occurred in Chicago, Illinois, which is within this judicial district.

## FACTS

12.     Plaintiff is a French family-owned company active in the skincare and make-up industries.  Plaintiff has 8,000 employees worldwide and sales in nearly 150 countries, including the United States, where sales are made via its wholly owned subsidiary Clarins USA, Inc., located in New York, New York.  Founded by Jacques Courtin-Clarins in Paris in 1954, Plaintiff has become a recognized leader in luxury skincare and make-up over the course of its nearly 70 years of existence.  In the past twelve years, Plaintiff has sold more than 34 million units of CLARINS® products in the United States and generated more than $2 billion USD in sales in the United States; for the year 2024 alone, Plaintiff has sold approximately 3,293,000 units of CLARINS® products in the United States, generating an estimated revenue of $220 million USD.  Such tremendous volume of sales and revenue generated over many years strongly supports the famous status of the CLARINS® trademark.

13.     Plaintiff's house mark CLARINS® was first registered in the United States for skincare products in 1972 and first used in the United States at least as early as 1972, with such use being continuous over at least the past 53 years in the United States.  Plaintiff's flagship

skincare product was launched in 1985 under the DOUBLE SERUM® trademark; the DOUBLE SERUM® trademark was registered in the United States in 2014, with use in commerce having begun at least as early as January of 1991 in the United States with such sales being continuous to date. In the past twelve years alone, Plaintiff has sold nearly 4.5 million units and generated approximately $283,900,000 USD in sales of DOUBLE SERUM® product in the United States; for the year 2024 alone, Plaintiff has sold approximately 740,000 units of DOUBLE SERUM® products in the United States, generating an estimated revenue of $52,745,000 USD. Such tremendous volume of sales and revenue generated over many years strongly supports the famous status of the DOUBLE SERUM® trademark.

14. For decades, Plaintiff's DOUBLE SERUM® product has won numerous awards in the United States and worldwide. For instance, for the United States in 2013, Plaintiff's DOUBLE SERUM® product was named the "Best Age-Defying Serum" in the Cosmopolitan Beauty Awards; at the 2024 WWD Beauty Inc Awards, it also was named the "Icon of the Year."

15. Plaintiff's trademarks are extremely valuable assets and critical to its business activities. In the United States alone, Plaintiff uses many trademarks in addition to the CLARINS® house mark and the mark for its flagship skincare product DOUBLE SERUM®. Many of these trademarks are registered with the United States Patent and Trademark Office, including but not limited to the following marks (hereinafter, "Plaintiff's Marks").

| Reg. No. | Trademark | Goods and Services |
|----------|-----------|--------------------|
| 935,002 | CLARINS | Class 3: skin cleaners in the form of lotion, cream and jelly; facial mask; lotion, cream, milk, jelly, oil used for the body, hands and feet; skin fresheners; day cream and night cream; moisture lotion, milk, cream, jelly and oil; preparations for the eyes and the throat in jelly, cream form; liquid make-up and makeup in the form of sticks, cream and milk; face powder; foam |

| | | |
|---|---|---|
| | | bath; lipstick; eye shadow; nail polish; rouge; cream, for the legs; mascara and eyebrow pencils |
| 1,574,179 | CLARINS | Class 3: skin cleansers; facial masks; lotion, cream, milk, jelly, oil and spray to moisturize, tone, relax and exfoliate the body, hands and feet; skin fresheners and tonics; skin day cream and night cream; skin moisturizing lotion, milk, cream, jelly and oil; cream for use around the eyes; makeup remover; foundation makeup; nail cream; bath and shower gel and foam; bubble bath; sun tanning and self tanning and self tanning gels and lotions; sunblock preparations; after-sun lotion, milk, cream, gel and oil; anti-wrinkle cream; and eau de toilette |
| 4,546,147 | DOUBLE SERUM | Class 3: Cosmetic preparations for face and body care; cosmetic creams for face and body care; cosmetic lotions for face and body care; cosmetic moisture lotion, milk, cream, petroleum jelly and oil |
| 5,393,507 | CLARINS<br>Hydra-Essentiel | Class 3: Beauty products for different parts of the human body, face, eyes, neck, bust, body, hands, feet, in particular beauty creams, beauty serums, beauty milks, beauty lotions, tonic lotions, beauty masks, beauty gels, beauty oils, refreshing spray for the skin, these excluding all products based on essential oils |
| 5,583,089 | my CLARINS | Class 3: Cosmetics; cosmetic creams; lotions for cosmetic use; oils for cosmetic use; milks for cosmetic use; gels for cosmetic use |
| 6,285,388 | CLARINS | Class 35: Retail store services featuring cosmetics and beauty products; retail store services featuring indoor fragrances; retail store services featuring candles; online retail store services featuring cosmetic and beauty products; online retail store services for cosmetics; online retail store services for indoor fragrances; online retail store services for candles; retail store services for cosmetics and beauty products by virtual reality and augmented reality; retail store services for indoor fragrances by virtual reality and augmented reality; retail store services for candles by virtual reality and augmented reality; retail store services for cosmetics and beauty products in a virtual environment; retail store services for cosmetics and indoor fragrances in a virtual environment; retail store services for candles in a virtual environment; advertising services related to cosmetics; loyalty program services, namely, providing incentive award programs through issuance and processing of loyalty points for purchase of a company's goods and services |

| | | and enabling participants to obtain discounts, promotions and rewards on goods and services for commercial, promotional and advertising purposes; business administration of consumer loyalty programs; development of advertising concepts; bill-posting; business advice regarding public relations communication; demonstration of goods; dissemination of advertisements; dissemination of advertising material; rental of advertising space; marketing; layout services for advertising purposes; advertising; publication of printed matter for advertising purposes; online advertising on a computer network; writing of advertising texts; commercial information and advice for consumers relating to choice of goods and services; administrative processing of purchase orders; presentation of goods on all communication media for retail purposes, namely, providing home shopping services in the field of cosmetics, beauty products, indoor fragrances and candles by means of the Internet, television, mobile phone and mail, and conducting product presentations, advertising for the promotion of goods; commercial marketing research in the field of cosmetics, perfumery and beauty products |
|---|---|---|

16. The above-identified registrations are valid, subsisting, uncancelled, and are evidence of Plaintiff's exclusive right to use the corresponding trademarks in commerce in connection with the goods and services specified in the registrations. Plaintiff's use of Plaintiff's Marks has not been abandoned, and Plaintiff's goods and services are associated with Plaintiff's Marks among customers as well as the relevant trade such that Plaintiff's Marks are well-known. Attached hereto at Exhibit A are true and correct copies of the United States Registration Certificates for Plaintiff's trademarks listed above.

17. In addition to its registered trademark rights, Plaintiff owns non-registered statutory and common law rights in and to Plaintiff's Marks in the United States.

18.     Plaintiff conducts business in the United States at its own online store located at www.clarinsusa.com.  The clarinsusa.com domain name first became active on November 12, 1997.  Plaintiff also widely markets and sells its products throughout the United States through its authorized distributors such as Nordstroms®, Sophora®, Macy's®, Saks Fifth Avenue® and other national or local retail stores.  These authorized distributors market and sell Plaintiff's products and services using Plaintiff's Marks, with such marketing and sales taking place through the distributors' own online and brick-and-mortar stores.

19.     Each of Plaintiff's products and services is associated with the house mark CLARINS®. The decades-long and extensive use of Plaintiff's Marks exclusively by Plaintiff and its authorized distributors has resulted in enormous goodwill, the value of which cannot be calculated or estimated.

20.     Plaintiff's Marks have been widely promoted both in the United States and throughout the world.  The general public associates Plaintiff's Marks with Plaintiff and recognizes that Plaintiff's products sold in the United States originate exclusively with Plaintiff.

21.     Plaintiff maintains quality control standards for all of Plaintiff's products and services.  Plaintiff ensures regulatory compliance for its cosmetic and skincare products, which are subject to oversight by the United States Food and Drug Administration (hereinafter, "FDA").

22.     The success of Plaintiff's CLARINS® brand and DOUBLE SERUM® sub-brand has resulted unfortunately in significant counterfeiting of Plaintiff's Marks and products over the years.  Consequently, Plaintiff has a worldwide anticounterfeiting program and regularly investigates suspicious stores that are identified in proactive Internet sweeps and/or reported by consumers.  The anticounterfeiting program is implemented to protect Plaintiff's brand integrity,

8

prevent consumer confusion, and ensure compliance with product quality standards as regulated by federal agencies, including the FDA.

23.     In or about July 2022, it was brought to Plaintiff's attention that Defendant was offering counterfeit versions of Plaintiff's CLARINS® and DOUBLE SERUM® products for sale at Defendant's website, as well as its physical stores, and utilizing Plaintiff's Marks without authorization. Below is a screenshot of Defendant's website taken on or about July 22, 2022, showing Defendant's promotion of counterfeit products using Plaintiff's Marks.



24.     Defendant has never had a license, consent, or permission from Plaintiff to use Plaintiff's Marks.

25.     In order to launch an investigation regarding the authenticity of the products using Plaintiff's Marks, Plaintiff purchased two DOUBLE SERUM® products via Defendant's website.  By reviewing the codes Plaintiff uses to track the manufacture and distribution of its products around the world, Plaintiff was able to confirm that those two products bought on Defendant's website were counterfeits.

26.     Plaintiff promptly notified Defendant of the sale of counterfeit CLARINS®
products and the associated trademark infringement.  Plaintiff demanded that Defendant
immediately cease and desist from selling counterfeit DOUBLE SERUM® products, as well as
any other counterfeit CLARINS® items.  Plaintiff also requested Defendant to submit for
Plaintiff's approval any communication Defendant would publish to the general consumer
regarding Defendant's sale of counterfeit DOUBLE SERUM® products.

27.     Defendant refused to enter into a written settlement agreement but begrudgingly
agreed to issue refunds and corrective notices to affected consumers who purchased the
counterfeit CLARINS® and DOUBLE SERUM® products through Defendant.  In or about
October 2022, Plaintiff's undersigned counsel received confirmation of the consumer refunds
and corrective notices from Defendant addressing the counterfeit CLARINS® and DOUBLE
SERUM® products.

28.     Given that Defendant confirmed that it had stopped all sales of infringing
products and claimed to issue a corrective notice and refund to each affected consumer, Plaintiff
did not bring a lawsuit against Defendant for injunctive relief and monetary damages.  Plaintiff
believed that Defendant would exercise at least a minimum level of care and oversight to prevent
any recurrence of the sale of counterfeit products and trademark infringement.

29.     Nonetheless, in or about October 2025, Plaintiff became aware that Defendant is
again offering counterfeit CLARINS® products bearing the DOUBLE SERUM® mark for sale
at a lower price than is offered for the authentic DOUBLE SERUM® products.  Upon
information and belief, the counterfeit DOUBLE SERUM® products are then sold both at
Defendant's website and in Defendant's physical stores.  Below is a side-by-side comparison of
the parties' websites promoting DOUBLE SERUM® products, which demonstrates Defendant's

use of Plaintiff's trade name, Plaintiff's Marks, and product images that are virtually identical to Plaintiff's product images.



30.     Plaintiff promptly purchased one of these DOUBLE SERUM® products from Defendant and confirmed that the product was counterfeit.  Plaintiff also conducted an investigation at several of Defendant's physical wholesale locations.  Plaintiff's investigation confirmed that Defendant has offered DOUBLE SERUM® products for sale in its physical stores, as well.

31.     On or about November 3, 2025, Plaintiff's undersigned counsel also placed an order through Defendant's website at www.costco.com  for a DOUBLE SERUM® product, which was available for delivery to the State of Illinois.

32.     Upon information and belief, Defendant deceives unknowing consumers by using Plaintiff's Marks without authorization and repeatedly selling counterfeit products bearing Plaintiff's CLARINS® and DOUBLE SERUM® marks at Defendant's website and in its physical stores.  Defendant's unauthorized use of Plaintiff's Marks has caused and will continue to cause the trade and purchasing public to believe that the counterfeit CLARINS® and DOUBLE SERUM® products are authorized, licensed, or sponsored by Plaintiff.

33.     Upon information and belief, Defendant's unauthorized use of Plaintiff's famous CLARINS® and DOUBLE SERUM® marks has resulted in actual consumer confusion. Plaintiff has identified third-party posts on social media in which consumers discuss purchasing counterfeit products from Defendant, mistakenly believing that they contain "the original formula" and are Plaintiff's genuine products being offered at a significantly lower price.  These instances of confusion clearly establish Defendant's acts of trademark infringement and sale of counterfeit goods among other wrongful acts.  Below is an example of a third-party post on social media showing actual confusion among the general public due to Defendant's infringing conduct.

12



34.     Upon information and belief, Defendant has been engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's trademark rights.  It is clear that Defendant has bad faith intention to deceive consumers for commercial gain and to unfairly exploit Plaintiff's goodwill and intellectual property.  At a minimum, Defendant has been negligent in failing to verify the authenticity of the CLARINS® and DOUBLE SERUM® products it obtains and sells to consumers in the United States.

35.     Defendant's conduct in selling counterfeit CLARINS® and DOUBLE SERUM® skincare products poses a significant risk to consumers, to include causing confusion regarding product origin and, more seriously, potential harm to their skin due to the absence of Plaintiff's

usual quality control standards. Furthermore, such conduct undermines Plaintiff's efforts to maintain compliance with regulatory requirements imposed by federal agencies.

36.     Plaintiff's famous CLARINS® and DOUBLE SERUM® trademarks are now associated with products that have not been confirmed as approved by U.S. regulatory agencies. Any unauthorized use of these marks in connection with such products poses potential risks to consumers and undermines the integrity, distinctiveness, and goodwill of Plaintiff's CLARINS® and DOUBLE SERUM® brands.

37.     Defendant's conduct has harmed, and will continue to harm, Plaintiff's reputation and the goodwill associated with the Plaintiff Marks and has resulted and will continue to result in additional injury that cannot entirely be quantified or captured.

38.     Defendant's conduct has caused Plaintiff substantial damage, for which Plaintiff does not have an adequate remedy.

## COUNT ONE
## FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114)

39.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

40.     This is a trademark infringement and counterfeit action against Defendant based on its unauthorized use in commerce of the federally registered Plaintiff's Marks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods offered by Defendant.

41.     Plaintiff's Marks are famous marks. Plaintiff's Marks and the goodwill of the business associated with these marks in the United States and throughout the rest of the world are of great and incalculable value. Due to Plaintiff's extensive advertising and sales, and the wide

14

popularity of Plaintiff's products and services, consumers have come to associate Plaintiff's

Marks with Plaintiff as a source of extremely high quality products and services.

42.     Plaintiff is the exclusive owner of Plaintiff's Marks and holds federal registrations

for Plaintiff's Marks.  Upon information and belief, Defendant has knowledge of Plaintiff's

rights in Plaintiff's Marks and is willfully infringing and intentionally using Plaintiff's house

mark CLARINS® and offering for sale counterfeit goods bearing Plaintiff's Marks.

43.     Defendant has sold or offered to sell, advertised and distributed, and is still selling

or offering to sell, advertising, and distributing products using unauthorized reproductions of

Plaintiff's Marks without Plaintiff's authorization or consent.

44.     Defendant's willful, intentional, and unauthorized use of Plaintiff's Marks has

caused actual confusion, and continues to cause confusion, mistake, and deception as to the

origin and quality of the products among the general public, leading the public to falsely believe

that Defendant's counterfeit CLARINS® and DOUBLE SERUM® products emanate or

originate from Plaintiff, or that Plaintiff has approved, sponsored, or otherwise associated itself

with Defendant.

45.     Due to Defendant's distribution of counterfeit CLARINS® and DOUBLE

SERUM® products to purchasers, Plaintiff loses the ability to control the nature and quality of

those products, which could result in harm to consumers and serious damage to Plaintiff's

reputation.

46.     Defendant's ongoing attempts to confuse the consuming public and trade off

Plaintiff's goodwill constitute willful trademark infringement and counterfeiting under Section

32 of the Trademark Act, 15 U.S.C. § 1114.

47.     Defendant has been unjustly enriched by virtue of its deception of consumers and misappropriation of Plaintiff's goodwill, while Plaintiff has been injured in an amount not yet ascertained.

48.     The injuries and damage sustained by Plaintiff have been directly and proximately caused by Defendant's advertisement, promotion, offering for sale, and sale of the counterfeit CLARINS® and DOUBLE SERUM® products, as well as Defendant's wrongful use of Plaintiff's Marks without Plaintiff's permission.

49.     As a result of Defendant's acts of infringement, Plaintiff has suffered irreparable harm for which Plaintiff has no adequate remedy at law, including damages to Plaintiff's goodwill.  If Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and goodwill.

## COUNT TWO
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

50.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

51.     Defendant's promotion, distribution, offering for sale, and sale of counterfeit products bearing Plaintiff's Marks has created confusion and continues to create a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendant's products by Plaintiff.

52.     By misappropriating and using Plaintiff's trade name and Plaintiff's Marks in connection with counterfeit goods, Defendant creates a false designation of origin and a

misleading representation of fact as to the origin and sponsorship of the counterfeit products offered by Defendant.

53.     The counterfeit DOUBLE SERUM® products offered by Defendant for sale look virtually identical to the DOUBLE SERUM® products sold and offered for sale by Plaintiff and, as such, Defendant's unauthorized use of Plaintiff's Marks causes actual confusion and is likely to continue causing confusion to the general purchasing public as to the source of the origin.

54.     Defendant's unlawful, unauthorized, and unlicensed distribution, offer for sale, and/or sale of the counterfeit products creates express and implied misrepresentations that Defendant's conduct has been authorized or approved by Plaintiff.  Defendant's deceiving business practice results in Defendant's profit at the expense of Plaintiff, causing great damage and injury to Plaintiff.

55.     Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit CLARINS® and DOUBLE SERUM® products to the general public involves the use of Plaintiff's Marks, which is a willful violation of Section 43 of the Trademark Act, 15 U.S.C. § 1125(a).  Defendant's use of Plaintiff's trade name, Plaintiff's Marks, and virtually identical product images, in connection with Defendant's goods in interstate commerce, constitutes a false designation of origin and unfair competition.

56.     Defendant has been unjustly enriched by virtue of its deception of consumers and misappropriation of Plaintiff's goodwill, while Plaintiff has been injured in an amount not yet ascertained.

57.     Moreover, the counterfeit CLARINS® and DOUBLE SERUM® products distributed by Defendant may contain ineffective or potentially harmful ingredients.  When such products cause injury to consumers or fail to perform as advertised by Plaintiff, consumer

confidence and trust in Plaintiff's brand are undermined, resulting in reputational harm, loss of future sales, and diminished market share. The actual extent of harm to Plaintiff's reputation and goodwill, and the possible loss of customers, are difficult to ascertain.

58.     As a result of Defendant's acts of ongoing infringement, Plaintiff has suffered irreparable harm for which Plaintiff has no adequate remedy at law, including damages to Plaintiff's goodwill. If Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and goodwill.

## COUNT THREE
## TRADEMARK DILUTION
## (15 U.S.C. § 1125(c))

59.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

60.     Because of the substantive investment Plaintiff has made in marketing its products and services and throughout years of continuous use of its trademarks in commerce, Plaintiff's CLARINS® mark has become instantly recognizable and distinctive in the cosmetic industry and has become both distinctive and famous. Consumers recognize Plaintiff's CLARINS® mark as singularly associated with Plaintiff's products and services. Therefore, Plaintiff's CLARINS® mark qualifies as a "famous mark" under the Federal Trademark Dilution Act (hereinafter, "FTDA"), 15 U.S.C. § 1125(c).

61.     Plaintiff's CLARINS® products have achieved significant commercial success in the United States, with widespread consumer recognition and demand. In the past twelve years, Plaintiff has sold more than 34 million units and generated more than $2 billion USD in sales of CLARINS® products in the United States; in 2024 alone, Plaintiff has sold approximately

3,293,000 units of CLARINS® products in the United States, generating an estimated revenue of $220 million USD.

62.     Because of the substantive investment Plaintiff has made in marketing its products and services and throughout years of continuous use of its trademarks in commerce, Plaintiff's DOUBLE SERUM® mark has also become instantly recognizable and distinctive in the cosmetic industry, and has become both distinctive and famous.  Consumers recognize Plaintiff's DOUBLE SERUM® mark as singularly associated with Plaintiff's products. Therefore, Plaintiff's DOUBLE SERUM® mark also qualifies as a "famous mark" under the FTDA, 15 U.S.C. § 1125(c).

63.     Plaintiff's DOUBLE SERUM® product has achieved significant commercial success in the United States, with widespread consumer recognition and demand.  In the past twelve years, Plaintiff has sold approximately 4.5 million units and generated $283,900,000 USD in sales of DOUBLE SERUM® product in the United States; in 2024 alone, Plaintiff has sold approximately 740,000 units of DOUBLE SERUM® products in the United States, generating an estimated revenue of $52,745,0000 USD.

64.     Plaintiff's publicity, including the CLARINS® and DOUBLE SERUM® marks, also extends across the nation by way of third-party awards and publications.

65.     Plaintiff's CLARINS® and DOUBLE SERUM® marks were famous prior to the time Defendant's infringing use of Plaintiff's CLARINS® and DOUBLE SERUM® marks is believed to have begun.

66.     When Defendant's infringing actions began, the CLARINS® and DOUBLE SERUM® marks were widely recognized by the general consuming public of the United States as a source designation for Plaintiff.

67.     Plaintiff has no control over the quality of Defendant's products offered by Defendant through Defendant's website and physical stores.  As a result of Defendant's infringement, the distinctive reputation of Plaintiff's CLARINS® and DOUBLE SERUM® marks is being and will continue to be diluted.

68.     Defendant's infringing conduct has diluted the value of Plaintiff's CLARINS® and DOUBLE SERUM® marks, as Plaintiff's Marks and business are negatively impacted when users of Defendant's counterfeit DOUBLE SERUM® products have negative experiences with Defendant's counterfeit DOUBLE SERUM® products.

69.     Defendant's marketing and offering for sale of counterfeit products in connection with Plaintiff's Marks is resulting in, and will continue to result in, the dilution of the distinctive nature of the Plaintiff's CLARINS® and DOUBLE SERUM® marks through blurring in violation of 15 U.S.C. § 1125(c).

70.     As a result of Defendant's acts of ongoing infringement, Plaintiff has suffered irreparable harm for which Plaintiff has no adequate remedy at law, including damages to Plaintiff's goodwill.  If Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and goodwill.

71.     Defendant's actions have been knowing, intentional, wanton, and willful.

## COUNT FOUR
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510/1, et seq.)

72.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

73.     Defendant has made an effort to pass off its counterfeit products as those of Plaintiff through the unauthorized use of Plaintiff's Marks.

74. By misappropriating and using Plaintiff's trade name and Plaintiff's Marks in connection with counterfeit goods, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the goods offered by Defendant.

75. Defendant's conduct violates the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 et seq. Defendant's use of Plaintiff's trade name, Plaintiff's Marks, and virtually identical product images, in connection with Defendant's goods in interstate commerce, creates express and implied misrepresentations that Defendant's conduct has been authorized or approved by Plaintiff. Defendant's deceiving business practice results in Defendant's profit at the expense of Plaintiff, causing great damage and injury to Plaintiff.

76. Defendant has been unjustly enriched by virtue of its deception of consumers and misappropriation of Plaintiff's goodwill, while Plaintiff has been injured in an amount not yet ascertained and that likely cannot be ascertained.

77. As a result of Defendant's acts of ongoing infringement, Plaintiff has suffered irreparable harm for which Plaintiff has no adequate remedy at law, including damages to Plaintiff's goodwill. If Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and goodwill.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment entered against Defendant as follows:

1. That judgment be entered in favor of Plaintiff and against Defendant on each and all claims made in the Complaint.

2. That Defendant, its affiliates, officers, agents, servants, employees, representatives, successors, and assigns, and all persons acting for, with, by, through, under, or in

active concert with Defendant, be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.   advertising (over the Internet, through catalogs, or otherwise), selling, importing, exporting, using, accepting orders for, or offering to sell counterfeit DOUBLE SERUM® products as well as other counterfeit CLARINS® products;

    b.   directly or indirectly infringing Plaintiff's Marks as described above in any manner, including but not limited to, copying, distributing, advertising, offering for sale, or sale of any product that is not authorized by Plaintiff to be sold in connection with Plaintiff's Marks;

    c.   distributing, advertising, selling, and/or offering for sale any unauthorized goods that picture, reproduce, or utilize the likenesses of, or which copy or bear a substantial similarity, to any of Plaintiff's Marks;

    d.   passing off, inducing, or enabling others to sell or pass off any product that is not an authentic Plaintiff's product or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Marks;

    e.   committing any acts calculated to cause consumers to believe that Defendant's products and services are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    f.   further diluting and infringing Plaintiff's trademarks and damaging Plaintiff's goodwill, reputation, and business;

    g.   manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by

Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including Plaintiff's Marks, or any reproductions, counterfeit copies, or colorable imitations thereof;

h. possessing any product bearing the Plaintiff's Marks or any reproduction, counterfeit copy, or colorable imitation thereof that is not an authentic product or not authorized by Plaintiff to be sold in connection with the Plaintiff's Marks. As part of compliance with this provision, Defendant or those who possess Defendant's goods should segregate and destroy counterfeit goods;

i. otherwise competing unfairly with Plaintiff in any manner.

3. That Defendant, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff a written report under oath setting forth in detail the manner in which Defendant has complied with any and all injunctive relief ordered by this Court.

4. That Plaintiff be awarded damages in an amount sufficient to compensate it for the injuries it has sustained by reason of Defendant's unlawful, willful and repeated infringement conduct, including Plaintiff's loss of goodwill, loss of past and/or future sales and damages caused by Defendant's conduct of trademark infringement, unfair competition and trademark dilution, as well as for state deceptive trade practices.

5. That Plaintiff be awarded increased damages based upon the intentional and willful nature of Defendant's conduct of the kind complained of herein.

6. That Plaintiff be awarded all gains, profits and advantages received by Defendant from the sale of products identified or advertised through the use of identical or confusingly similar designations of Plaintiff's Marks.

7.     That the award to Plaintiff for Defendant's infringement of Plaintiff's Marks be trebled as provided by 15 U.S.C. § 1117.

8.     In the alternative, that Plaintiff be awarded statutory damages of Two Million U.S. Dollars and No Cents ($2,000,000.00) for each and every use of Plaintiff's Marks pursuant to 15 U.S.C. § 1117(c)(2).

9.     That the Court issue an order that Plaintiff recover the costs of this action together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

10.     That Plaintiff be awarded punitive damages for Defendant's willful, repeated, and malicious acts of common law unfair competition.

11.     That Defendant be ordered to (a) prepare and send to its customers and the general public a corrective statement approved by Plaintiff, correcting all false statements made and all misrepresentations made concerning the DOUBLE SERUM® counterfeit products and Plaintiff's Marks; (b) disclaim any association between Defendant and Plaintiff and/or the parties' products and services; (c) recall and make reasonable efforts to obtain the return of any

counterfeit Plaintiff's products from its customers; and (d) issue refunds to its customers who purchased any counterfeit CLARINS® and DOUBLE SERUM® products from Defendant.

12.     Grant Plaintiff any and all other relief that this Court deems just and proper.

Respectfully submitted,

CLARINS

Date:  November 6, 2025          By:  _____
                                      Mary Catherine Merz
                                      Yan Zong
                                      MERZ & ASSOCIATES, P.C.
                                      408 Madison Street, Suite A
                                      Oak Park, Illinois 60302
                                      (708) 383-8801 (phone)
                                      litigation@merz-law.com
                                      mmerz@merz-law.com
                                      yzong@merz-law.com

                                      Attorneys for Plaintiff